LEOPOLD LOEB, Appellant, *v.* AUGUSTUS T. CHUR, *et al.,* Respondents.

*Supreme Court, First Department, General Term, July 9, 1889.*

1. *Corporations.* *Trustee.*—A trustee of the bondholders is not a trustee for the railroad company, but represents the interest of the mortgagee and is under legal obligation to protect only this interest. A creditor at large cannot be heard to complain of his action in giving a release of errors in a decree, under a proceedings to foreclose the mortgage on the company's property.

2. *Same.*—A trustee for bondholders under a second mortgage, which is an insufficient security, though a director, owes no duty or trust to the corporation which will prevent his looking out for his own interest.

3. *Same.* *Officer.*— Though an officer of a corporation is bound to look out for its interests, he is not necessarily bound to sacrifice his own interests in so doing.

4. *Same*—While holding securities of the corporation in pledge for money loaned to it, he need not surrender them without payment or tender of payment.

5. *Same.* *Creditor.*—It must appear, in order to entitle a creditor to

attack the action of a director or officer of a company, that he has sus-- tained some damage thereby.

6. *Pleadings.  Title.*—A party is not bound to set out the evidence of his title, only facts, in his pleading.  Ownership and a right of possession are facts.

Appeal from a judgment entered on a decision of the court at special term.

*Peckham & Tyler*, for appellant.

*Jacob F. Miller*, for respondent.

VAN BRUNT, P. J.—This action was brought by the plaintiff as a judgment creditor of the Chicago, Danville and Vincennes Railroad Company, to recover property held by the defendants and alleged to belong to said company.

The defendants, Augustus T. Chur and Charles Elwell were directors of said company, and the defendant, James W. Elwell, was a director of said company until 1873, and also a trustee of the holders of bonds issued under a second mortgage of said company.  The learned judge before whom this case was tried found—and such findings were justified by the evidence—that the defendants, Chur & Elwell, loaned to said company divers sums of money, and took as collateral security the bonds of the company, and that when said debts became due and payable, the company was unable to pay them, and the claims largely exceeded· the value of the bonds.

There was evidence tending to show that on account of the inability of the company to pay, it gave up the bonds to Elwell and Chur in.payment of the debts of the company to them.

The defendant, Charles Elwell, held five shares of the stock of the company, and it is not claimed that he received any property belonging to it.  The complaint was therefore, necessarily dismissed as to him.

In the year 1875, the trustees of the holders of the bonds issued under the first mortgage of the said company brought an action for the foreclosure of the mortgage, in which action the defendant, James W. Elwell, as trustee under the second mortgage, was made a party defendant, and such proceedings were had that a decree of foreclosure and sale was entered, and the property belonging to said company was sold thereunder, which sale was afterwards affirmed by the court, and the Chicago and Eastern Illinois Railroad Company, which was organized under the laws of Illinois, became the owners of the rights obtained by the purchaser under the foreclosure sale, and entered into possession of the property sold under said decree of foreclosure and sale.

An appeal was afterwards taken from this judgment of foreclosure, and in October, 1881, the judgment was reversed and the case remitted for further proceedings in conformity with instructions from the supreme court of the United States. The Chicago and Eastern Illinois Company thereupon commenced a cross-bill claiming that it became entitled to all the interest of the Chicago, Danville and Vincennes Railroad Company, and such proceedings were had that on the 30th of June, 1884, a decree was entered adjudicating that the Chicago and Eastern Illinois Railroad Company was vested with the property theretofore belonging to the Chicago, Danville and Vincennes Railroad Company.

This decree appears to have been entered pursuant to an agreement entered into between the president of the Chicago and Eastern Illinois Railway Company, and the president of the Chicago, Danville and Vincennes Railway Company, whereby it was agreed that half a million dollars should be paid under an ostensible agreement for the sale of the stock and bonds of the Danville road. Notwithstanding the entry of the decree the delivery of the securities was refused for fear there might be an appeal, and thereupon a

release of errors was executed by Elwell as trustee, and Chur also executed a release of errors, as president of the Danville company, and half a million dollars in bonds was paid to Judson, who had been president of the Danville road, by the Chicago and Eastern Illinois Company, and $11,000 delivered to Elwell and $10,000 to Chur ostensibly in exchange for certain stock and bonds of the Danville road. And it is these bonds, or the proceeds thereof, that the plaintiff, as a creditor of the Danville road, seeks to recover, claiming that they were received by these defendants in fraud of the rights of the creditors of the Danville road.

Although the plaintiffs attack the finding of the court that the Danville road had been indebted to Chur and Elwell, long prior to the transactions in question, there was ample evidence to support the same, and we must consider the legal propositions which are presented assuming such indebtedness to exist.

There is an error which seems to pervade the argument of the appellants in reference to the position of Elwell towards this transaction. It is claimed that Elwell, because he was a trustee for the holders of the second mortgage bonds of the Danville company, owed some duty to the company. This claim seems to be based upon the assumption that in case of a foreclosure of the mortgage to secure the amount due on the bonds issued under the second mortgage, the second mortgage trustee was bound to pay over any excess to the Danville company.

But conceding that to be true until the mortgage was foreclosed and such surplus was realized, there was no duty or trust which the defendant Elwell owed to this corporation. He was a trustee for the bondholders, and he was no more a trustee for the railroad company than a mortgagee in any other mortgage is a trustee for the mortgagor. The interest which he represented was the interest of the mortgagee, and it was this only which he was under any legal liability to protect. If any of the holders of the

bonds secured by the second mortgage had claimed that Elwell by his release of error, had violated his trust, an entirely different question would have been presented. Elwell had ceased to be a director before these transactions took place, and as a consequence, owed no duty to the corporation. He was simply bound to look after the interests of the bondholders, and until they complain of his action certainly a creditor at large cannot be heard to attack him. He has not in any way injured or interfered with any rights which they have, or liens which they have secured. Therefore, as far as his action is concerned, it does not appear that he was fettered by anything which prevented him from looking out for his own interests, certainly so far as any rights which the plaintiffs have which they can enforce against him.

The defendant Chur stands in a different relation to this transaction from that occupied by Elwell. He was an officer of the corporation, and was bound to look out for its interests, but he was not necessarily bound to sacrifice his own interest in the doing so. He was a creditor of the corporation for a large amount. The corporation had given him bonds to secure this indebtedness, which turned out to be worthless, and if they were sufficiently valuable to anybody else to use for any purpose, he had a right to sell them for that purpose, they having been abandoned to him by the railroad company.

It is, however, claimed that this was not the only consideration given by Chur for the bonds in question but that the release of errors, which was voted for by him as one of the directors of the corporation, was also part and parcel of the consideration. Conceding this to be the fact, there seems to be no ground upon which Chur can be deprived of the securities which he received from the Danville company, except by the payment of the indebtedness of that company to him, and as the securities which he had received from the Chicago and Eastern Illinois Company

were a substitute for the securities which he had received from the Danville company, it is clear that the creditors of the Danville company can have no claim upon Chur for the surrender of these securities until they have paid, or offered to pay, the indebtedness of the Danville company to him.

It is no answer to this proposition to say that because it is impossible to determine how much was paid for the release of errors, and how much for the bonds of the Danville company, which Chur holds, that, therefore, the Danville company is entitled to take the whole of the proceeds of the transaction, upon the principle that where a person who occupies a trust relation, mixes up his own funds with those of the trust estate so that they cannot be separated, he thereby is bound to indemnify the trust estate, even at the expense of his own funds.

It is clear from the evidence that the consideration for which the Chicago and Eastern Illinois bonds were given to Chur, was the stock and bonds which Chur transferred to them, and by which was given the control of the organization of the Danville company to the Chicago and Eastern Illinois company. This was the object of the negotiation, and the release of the right to appeal was simply given for the purpose of not delaying the consummation of the transaction, and not waiting for the time within which such appeal might be taken to elapse.

It further appears from the evidence that under the agreement made, by which these bonds and stocks, were to be surrendered, nothing had been said in regard to this release of the right to appeal. This was an afterthought resulting from the refusal of the Chicago and Eastern Illinois Company to part with its property until the right to appeal from this decree had been extinguished. It, therefore, very clearly appears that it was the holding of the stock and bonds of the Danville company, which gave these parties the opportunity to make the trade they did, and

that the whole value of the transaction arose from the fact that the Chicago and Eastern Illinois Company could, by becoming the owner of these stocks and bonds, control, as already stated, the organization of the Danville company.

It is conceded that the Danville company was hopelessly insolvent; that it had no property which was not more than covered by the mortgages, and that there was nothing which the general creditors of the company could possibly reach, and it would be the height of injustice to hold that simply because of the giving of this release Chur had thereby so far violated his duties that he should lose the whole of his debt, which the Danville company owed to him and the security given by the Danville company to him for that debt.

There is not a particle of evidence going to show that by the granting of that release any damage was sustained by any creditor of the Danville company, or that the road suffered any injury. It is difficult to see upon what theory it can be held where there were second mortgage bonds covering the property of the corporation which were worthless, that the giving of this release enured at all to the damage of creditors who had no security at all.

In order to entitle a creditor to attack the action of a director or officer of a company, it must appear that he has sustained some damage thereby ; and where it conclusively appears, as it does, from the evidence that the property of the company was insufficient to pay its secured debts which were in advance of any lien the plaintiff might have as a judgment creditor, it is difficult to see upon what theory, except the most abstract one, and except by the greatest stretch of the imagination, any injury can be said to have been suffered by the plaintiff or by the company itself by reason of the action of the director.

If the Danville company was a pursuing party under these circumstances, it is clear that no recovery could be had because it had suffered no damage, and if the Danville

company could not maintain the action it seems equally certain that the plaintiff, its judgment creditor, has no standing in court, certainly without offering to pay Mr. Chur that which he had advanced to the company, and for which he held these securities.

The counsel for the appellant has made some criticism in regard to the form of the answer of these defendants that they did not allege that they held these bonds of the Danville company as security for their debt , but that they alleged that they were the owners and, therefore, they could not show that they had any other title or right to this stock.

We know of no such rule of pleading. A party claiming, as owner, the right to possession of property, the title to which is assailed, has a right to show any facts which will defeat the claim of any party attacking his right to possession. He is not bound to set out the evidence of his title. All that he is bound to do is to claim the title, to claim the right of possession by his pleading, and then, when his title is attacked, to prove any fact which will justify the conclusion that he is either the owner or entitled to the possession of the property. In other words, as has already been stated, a party is not bound to set out evidence in his pleadings. All that he is required to do is to set out facts, and ownership and a right to possession are just as much facts as any other existing fact which may be asserted.

We think upon the whole case that the learned judge came to a correct conclusion, although perhaps upon a different ground from that signified in this opinion.

The judgment should be affirmed, with costs.

BRADY and DANIELS, JJ., concur.